**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | |
| SUBPOENA TO TERRY KEEBAUGH | : | MISC. ACTION |
| | : | |
| SUSAN E. CONREY | : | |
| | : | |
| v. | : | |
| | : | |
| IBM CORPORATION | : | NO. 19-163 |

**MEMORANDUM OPINION**

**Savage, J.**                                                                                              **November 5, 2019**

Pursuant to Federal Rule of Civil Procedure 45(d)(3)(A)(iii), defendant IBM Corporation moves to quash a subpoena issued by plaintiff Susan Conrey commanding a former IBM employee to produce documents that had been produced subject to a protective order in an action against IBM in the Southern District of New York. IBM argues that Conrey has already sought many of these documents from IBM in her underlying action in the District of New Jersey, and that the documents are privileged under a stipulated protective order entered in the New York case. Conrey contends that IBM's motion to quash is untimely and IBM has failed to meet its burden of showing the requested documents are privileged or that any harm will result from disclosure.

We conclude that IBM's motion to quash is untimely, but the untimeliness is excused for good cause. We shall grant IBM's motion to quash the subpoena to the extent that the requested documents are privileged under the stipulated protective order in the New York action or were already sought from IBM in the underlying case. Any remaining documents that do not fall into either of those categories are more appropriately sought from IBM through the discovery process. The District of New Jersey has already entered

1

a confidentiality order and is considering a pending motion for a protective order in the underlying action.

## Factual Background

In February 2017, Susan Conrey sued IBM Corporation, her former employer, for age discrimination in the District of New Jersey (the "Conrey Action").[1] On August 16, 2019, she served a non-party subpoena on former IBM employee Terry Keebaugh, seeking documents relating to (1) communications with Denise Williams, IBM's former Vice President of Human Resources, (2) IBM's new hire programs, and (3) IBM's "Millennial Task Force" or "Early Career" programs (the "Keebaugh subpoena").[2] Conrey gave notice to IBM of the Keebaugh subpoena on August 14, 2019.[3]

Keebaugh is a plaintiff in an unrelated lawsuit for age discrimination against IBM in the Southern District of New York (the "Keebaugh Action").[4] IBM produced documents to Keebaugh during discovery in that action. The production was subject to a stipulated protective order limiting the use of any IBM-produced documents designated as "confidential" or "attorney's eyes only" to solely the Keebaugh Action (the "Keebaugh Protective Order").[5]

## Discussion

Federal Rule of Civil Procedure 45(d)(3)(A)(iii) provides "[o]n *timely* motion, the issuing court must quash or modify a subpoena that . . . requires disclosure of privileged

---

[1] Def.'s Mot. to Quash at 4-5 (ECF No. 1).

[2] *Id.*

[3] Pl.'s Opp'n to Def.'s Mot. to Quash at Exh. I (ECF No. 6).

[4] Def.'s Mot. to Quash at 4 (ECF No. 1).

[5] *Id.* at 6, 9.

or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii) (emphasis added). "The party moving to quash bears the burden of establishing that a privilege attaches to the subpoenaed documents." *Savant Systems, LLC v. Crestron Elecs., Inc.*, No. 12-51, 2012 WL 987404, at *4 (E.D. Pa. Mar. 22, 2012) (citations omitted).

### A. Standing

A party has standing to move to quash a non-party subpoena if it claims a personal right or privilege regarding the production. *Savant Systems,* 2012 WL 987404, at *3 (citing *Davis v. Gen. Acc. Ins. Co.*, No. 98-4736, 1999 WL 228944, at *2–3 (E.D. Pa. Apr. 15, 1999)). The subpoena seeks confidential documents that have been produced subject to a protective order in Keebaugh's unrelated action against IBM. Thus, because IBM has a personal right with respect to the documents sought, it has standing to challenge the Keebaugh subpoena. *See Davis*, 1999 WL 228944, at *2–3 (finding defendants had standing to challenge non-party subpoena where they did not specifically address whether they allege any personal right or privilege in the subject matter, but claim the subpoenas involve production of documents protected by attorney-client privilege).[6]

### B. Timeliness

Motions seeking to quash or modify a subpoena under Rule 45(d)(3)(A) must be "timely." Fed. R. Civ. P. 45(d)(3)(A); 9 Moore's Federal Practice § 45.50[1] (3d ed. 2016).

---

[6] *See also Murr v. Midland Nat. Life Ins. Co.*, No. 11-1362, 2011 WL 3236001, at *1 (S.D. Cal. July 28, 2011) ("Because all of the documents requested through the subpoena are documents Midland produced in another litigation subject to a protective order, it clearly does have standing based upon its 'personal right' and interest in the documents."); *Dart Indus., Inc. v. Liquid Nitrogen Processing Corp. of Cal.*, 50 F.R.D. 286, 291–92 (D. Del. 1970) (while movant did not allege any personal privilege with respect to the requested documents, it did assert that some of the documents were "secret and confidential" and produced under protective orders).

3

Rule 45 does not provide a specific time period for bringing a motion to quash. Courts have required motions to quash be made before the date for compliance, unless the compliance period is unreasonably short. *Id.*; *City of St. Petersburg v. Total Containment, Inc.*, No. 06-20953, 2008 WL 1995298, at *2 (E.D. Pa. May 5, 2008) (denying motion to quash as untimely where party filed motion one day after compliance date).[7]

What is a "reasonable time to comply" is flexible. Courts consider fourteen days from the date of service presumptively reasonable. *Grant Heilman Photography, Inc. v. John Wiley & Sons, Inc.*, No. 11-1665, 2011 WL 5429005, at *7 (E.D. Pa. Nov. 7, 2011) (citing *Cris v. Fareri*, No. 10-1926, 2011 WL 4433961, at *2 (D. Conn. Sept. 22, 2011)). Some courts have found less time reasonable. *See City of St. Petersburg*, 2008 WL 1995298, at *2 (denying motion to quash where subpoena provided compliance period of twelve days).

Here, Conrey served the subpoena on Keebaugh on August 16, 2019, after giving IBM notice by email two days earlier. The date of compliance listed in the subpoena is August 29, 2019.[8] This compliance period is reasonable.

On September 3, 2019, five days after the return date in the subpoena, IBM filed a motion to quash in the District of New Jersey.[9] On September 11, 2019, the court

---

[7] *See also Toole v. Cordovani*, No. 13-6720, 2014 WL 132002, at *2 (D.N.J. Jan. 10, 2014) (denying motion to quash as untimely where filed three days after compliance date); *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, No. 14-25-38, 2014 WL 5810920, at *2 (M.D. Fla. Nov. 7, 2014) (denying motion to quash as untimely where filed minutes after compliance date); *CCB LLC v. Banktrust*, No. 10-228, 2010 WL 4038740, at *1 (N.D. Fla. Oct. 14, 2010) (denying motion to quash as untimely where filed "twenty-seven" minutes before the compliance date on a federal holiday, thus not providing sufficient time "for any court to issue a meaningful and timely order").

[8] Def.'s Mot. to Quash Exh. B (ECF No. 1).

[9] *Id.* at 4.

dismissed the motion without prejudice because it lacked jurisdiction over the motion.[10] On September 18, 2019, twenty days after the subpoena return date, IBM filed the instant motion to quash the subpoena.[11] We conclude IBM's motion to quash is untimely.

"Good cause" or other circumstances may excuse an untimely motion. Courts have discouraged imposing a waiver of privilege merely because a party filed a belated motion to quash. *See Chevron Corp. v. Stratus Consulting, Inc.*, No. 10-00047, 2010 WL 2135217, at *4 (D. Colo. May 25, 2010). The movant's communicating opposition to the subpoena before the compliance date may excuse an untimely motion to quash. *See Spring Pharm., LLC v. Retrophin, Inc.*, No. 18-04553, 2019 WL 3731725, at *6 (E.D. Pa. Aug. 8, 2019). Where the delay in filing a motion to quash resulted from attempts to negotiate and resolve the dispute, courts may excuse untimeliness. *See Hartz Mountain Corp. v. Chanelle Pharmaceutical Veterinary Products Manufacturing Ltd.*, 235 F.R.D. 535, 536 (D. Me. 2006); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 52 (S.D.N.Y. 1996). To hold otherwise would discourage parties from attempting to resolve disputes before seeking judicial intervention.

Denying IBM's motion to quash as untimely would result in disclosure of confidential material subject to a protective order in another case. This ground alone constitutes "good cause" sufficient to excuse the untimeliness. Additionally, IBM's counsel communicated its objection to the Keebaugh subpoena to Conrey's counsel on August 22, 2019, before the compliance date.[12] The parties attempted to resolve the dispute, but

---

[10] *Id.*

[11] *Id.* at 1.

[12] *Id.* at 4.

were unsuccessful.[13] The Keebaugh subpoena seeks documents without carving out those designated as confidential under the Keebaugh Protective Order.[14] These circumstances are sufficient to excuse the filing of the motion after the compliance date.

### C. Privilege

Courts are particularly wary of non-party subpoenas seeking documents that are already the subject of a protective order in other litigation. In *Savant Systems*, a factually similar case, the plaintiff and the defendant were engaged in litigation in the District of Massachusetts, and the plaintiff filed a non-party subpoena requesting documents from a plaintiff in a separate, unrelated action against the same defendant in the District of Utah. 2012 WL 987404, at *1. In the Utah action, the defendant had produced 300,000 documents designated "confidential" or "highly confidential" under a court-approved, stipulated protective order. *Id.* The Utah protective order provided that confidential documents produced in the Utah action may only be used in that action and may not be used for any other purpose or in any other action. *Id.* The plaintiff argued that the Utah protective order should be vitiated because any documents produced in the Massachusetts action will be subject to the protective order issued in the Massachusetts action. *Id.* at *4.

The court granted the defendant's motion to quash because the requested documents were clearly privileged under the Utah protective order. *Id.* The court noted that the plaintiff failed to cite any authority suggesting that the existence of a protective order in the Massachusetts action constituted the type of exception that would allow

---

[13] *Id.*

[14] *Id.* at Exh. B.

6

disclosure of privileged information under Rule 45(d)(3)(A)(iii). *Id.* Other courts have come to the same conclusion when faced with similar facts. *See Murr*, 2011 WL 3236001, at *1–2 (quashing plaintiff's non-party subpoena seeking documents produced in separate litigation under protective order); *Mona Vie, Inc. v. Amway Corp.*, No. 08-02464, 2009 WL 524938, at *4 (D. Colo. Mar. 2, 2009) ("[T]he Court has serious concerns about the effect of the Protective Order entered by the District of Utah on the discovery sought by Defendant's subpoenas. The Court does not believe that it is appropriate for Defendant to attempt to circumvent the protections provided in the Protective Order by attempting to obtain Plaintiffs' privileged and/or confidential documents from [a non-party]."); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,* No. 74–2451, 1978 WL 1333, at *3 (E.D. Pa. May 2, 1978) ("[T]he status of confidentiality of these documents [under a protective order] will not be breached by an order of this court . . . . It is an abuse of the discovery process to order a defendant in the instant litigation to produce all documents which he had submitted in another case under the judicial imprimatur that those documents, when submitted, were judicially protected as confidential.")

IBM claims the Keebaugh subpoena must be quashed because it seeks documents produced by IBM in the Keebaugh Action that are designated confidential and protected by the Keebaugh Protective Order.[15] IBM asserts that it has not publicly disclosed the previously produced documents.[16]

Conrey counters that IBM has not met its burden of showing the Keebaugh subpoena implicates privileged material. According to Conrey, IBM mischaracterizes the

---

[15] *Id.* at 9.

[16] *Id.*

7

documents she is seeking through the subpoena.[17] She insists that she is *not* seeking the documents produced by IBM in the Keebaugh Action, but rather documents relating to Denise Williams and the new hire and early career programs that are in Keebaugh's "possession."[18] Conrey argues that IBM has not represented whether the documents sought in the Keebaugh subpoena are in IBM's custody, possession, or control, or whether it has produced these documents in the Keebaugh Action.[19] Conrey also argues that IBM fails to identify which documents sought in the Keebaugh subpoena are subject to the Keebaugh Protective Order and why or how those documents are privileged and protected.[20] Like the plaintiff in *Savant Systems*, Conrey contends the discovery confidentiality order entered by the District of New Jersey in the underlying case will serve as adequate protection for the privileged material.[21]

IBM maintains that whether the documents sought were produced by IBM pursuant to the Keebaugh Protective Order or whether they are other IBM-confidential documents in Keebaugh's "possession," they are not the proper subject of a third-party subpoena.[22] IBM argues that Conrey should seek these documents from IBM instead of Keebaugh, and asserts that Conrey has already requested at least some of these documents from

---

[17] Pl.'s Opp'n to Def.'s Mot. to Quash at 6 (ECF No. 6).

[18] *Id.* at 3-4.

[19] *Id.* at 4.

[20] *Id.* at 6-7.

[21] *Id.* at 7.

[22] Def.'s Mot. to Quash at 6 (ECF No. 1).

8

IBM in the Conrey Action, to which IBM objected.[23] IBM accuses Conrey of using the Keebaugh subpoena to circumvent the discovery process in her action.[24]

We agree that any requested documents covered by the Keebaugh Protective Order should not be disclosed to Conrey through a subpoena and that Conrey should seek those documents in discovery in her own action. Like the protective order in the Utah action in *Savant Systems*, the Keebaugh Protective Order provides:

> "The Confidential Information and Attorneys' Eyes Only Information disclosed will be held and used by the Non-Designating Party solely for use in connection with the above-captioned action, unless such information and documents that constitute the Confidential Information or Attorneys' Eyes Only Information have been publicly disclosed by the Designating Party. For the avoidance of doubt, Confidential Information and Attorneys' Eyes Only Information may not be used by either party in connection with any other action, unless such information and documents that constitute the Confidential Information or Attorneys' Eyes Only Information have been publicly disclosed by the Designating Party."

Def.'s Mot. to Quash Exh. C at ¶ 5. It is unclear exactly how many of the documents sought by the Keebaugh subpoena were already produced by IBM and designated confidential under the Keebaugh Protective Order. IBM contends it is the "vast majority,"[25] but gives no specifics as to what proportion of the requested documents are covered. Regardless of which documents sought are subject to the Keebaugh Protective Order, the covered documents are clearly confidential and protected, and cannot be disclosed outside of the Keebaugh Action.[26] *Savant Systems*, 2012 WL 987404, at *4. The fact that

---

[23] *Id.* at 7-8.

[24] *Id.* at 4-5, 7, 10.

[25] *Id.* at 5.

[26] Conrey's reliance on *Williams v. Claims Overload Sys.* and *Malibu Media, LLC v. Does No. 1-30* is misplaced. *Williams* did not involve a protective order filed in another action. In *Williams*, the defendant served a subpoena on the plaintiff's limited partnership, and the plaintiff objected on grounds of privilege. No. 97-6851, 1998 WL 254960, at *1 (E.D. Pa. May 6, 1998). The plaintiff did not "elaborate further on the

9

the District of New Jersey has already entered a confidentiality order in the Conrey Action does not displace the Keebaugh Protective Order. *Id. See also Murr*, 2011 WL 3236001, at *2 ("The fact that there is a protective order in the Murr Action that may protect confidential information obtained from a non-party does not mean that information beyond what is within the scope of discovery as set forth in Rule 26 may be obtained by subpoena.")

These documents are appropriately sought from IBM in the course of discovery in the Conrey action. Whether Keebaugh obtained these documents from IBM subject to the Keebaugh Protective Order or possesses them independently, the fact remains that IBM has indicated they are within its custody, possession, or control. Conrey may request these documents through Rule 34 from IBM in the Conrey Action. *See Layman v. Junior Players Golf Acad., Inc.*, 314 F.R.D. 379, 385 (D.S.C. 2016) (citing 8A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2204 at 365 (2nd ed. 1994)) ("If documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a nonparty witness.")[27]

---

privilege being invoked or the character of the matter he has deemed to be confidential." *Id.* The court held that the plaintiff failed to show that the information sought was subject to a privilege or other form of protection. *Id.* Similarly, in *Malibu Media*, the defendants only asserted that they had "privacy or proprietary interests over the information sought" by the non-party subpoenas. No. 12-3896, 2012 WL 6203697, at *3 (D.N.J. Dec. 12, 2012). "Without more, the Court finds Defendants have not satisfied their burden of establishing the existence of any privileged or protected information." *Id.* at *3. The court also found that the defendants had disclosed their personal information to their internet service providers when setting up their Internet accounts, thus negating any privacy interest. *Id.* at *4. These cases are distinguishable from this case, where the existence of a protective order from another case establishes the privilege and protection over the requested documents.

[27] *See also Murr*, 2011 WL 3236001, at *2 ("Murr may request the same documents being sought from [non-party] through discovery directed to [defendant] in the Murr Action, subject to normal discovery procedures and protections in place in his own action. Murr may request the documents directly from [defendant] without involving a third party that does not have the same interests as [defendant] in protecting the documents relating to its business practices and policyholders.")

IBM claims that Conrey has already requested at least some of these documents from IBM in her Third Set of Requests for Production of Documents in the underlying action, and IBM has objected. Conrey may not circumvent the discovery process through a non-party subpoena. "The leading treatises agree that . . . resort to Rule 45 should not be allowed when it circumvents the requirements and protections of Rule 34 for the production of documents belonging to a party." *Stokes v. Xerox Corp.*, No. 05-71683, 2006 WL 6686584, at *3 (E.D. Mich. Oct. 5, 2006).[28] To the extent the documents sought in the Keebaugh subpoena overlap with Conrey's Third Set of Requests for the Production of Documents, the Keebaugh subpoena is an improper end-run around the discovery procedures governing the Conrey Action. If any of the subpoenaed documents are not covered by Conrey's third set of requests, Conrey may seek them from IBM in the Conrey Action.

In either event, the District of New Jersey may determine whether the documents must be produced or whether they are protected. It has managed discovery in the Conrey Action and is more familiar with the discovery history.[29] The District of New Jersey is the proper court for IBM to address any confidentiality concerns.

For these reasons, we grant IBM's motion to quash the Keebaugh subpoena.[30]

---

[28] *See also* 7 Moore's Federal Practice § 34.02[5][e] (3d ed. 2016) (citing *Hasbro, Inc. v. Serafino,* 168 F.R.D. 99, 100 (D. Mass. 1996)) ("Although Rule 45 is not limited by its terms to nonparties, it should not be used to obtain pretrial production of documents or things, or inspection of premises, from a party in circumvention of discovery rules or orders. Discovery from a party, as distinct from a nonparty, is governed by Rule 34, not Rule 45."); *Murr*, 2011 WL 3236001, at *2 ("Murr also has outstanding document requests to [defendant] in the Iowa action. Given that Plaintiff Murr has not exhausted his remedies before the court in Iowa, the Court does not find that the production of documents from a third party that are subject to a protective order in another action is necessary at this time.")

[29] Pl.'s Opp'n to Def.'s Mot. to Quash at 1-2 (ECF No. 6).

[30] If the parties to the Keebaugh Action dispute or need clarification about the scope of the Keebaugh Protective Order, they should address that issue within the confines of the Keebaugh Action. *Savant Systems*, 2012 WL 987404, at *4. *See also Wolk v. Teledyne Industries, Inc.*, 475 F. Supp. 2d 491,

---

499–500 (E.D. Pa. 2007) (observing that a matter was placed in suspense to allow the court that issued the protective order to address an alleged violation of the order). We decline to address IBM's motion for a protective order because it is unnecessary.